RECEIVED
IN MONROE, LA
DEC 11 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CHARLES REED | CIVIL ACTION NO. 04-1481 |
| VERSUS | JUDGE ROBERT G. JAMES |
| FRANKLIN PARISH HOSPITAL SERVICE DISTRICT, ET AL. | MAG. JUDGE JAMES D. KIRK |

## RULING

This case involves a claim of immunity under the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11111(a), *et seq.* ("HCQIA"), made by Defendants Franklin Parish Hospital Service District[1], Joe Gravelle, Rebecca Singleton, Woodrow Bell, Madge Wilson, John Carroll, and Paula Walker.[2] Defendants claim immunity against Dr. Charles Reed's ("Dr. Reed") claims that Defendants violated his due process rights and breached their contract when the Board of Commissioners ("Board") at Franklin Medical Center ("FMC") suspended his medical staff membership and clinical privileges.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 34] claiming that they are entitled to immunity under the HCQIA on Dr. Reed's 42 U.S.C. § 1983 due process claim and state law breach of contract claim. Dr. Reed filed a Memorandum in Opposition [Doc. No. 40] responding that HCQIA immunity does not apply to either claim.

---

[1]Franklin Parish Hospital Service District is doing business as Franklin Medical Center.

[2]The individual Defendants are members of the hospital's Board of Commissioners and its administrator.

1

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. Defendants' Motion for Summary Judgment on Dr. Reed's due process claim is DENIED, and Defendants' Motion for Summary Judgment on Dr. Reed's breach of contract claim is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Dr. Reed is a licensed physician who practices family medicine in Winnsboro, Louisiana. He held medical staff membership and clinical privileges (hereinafter referred to as "privileges") at FMC until his suspension on February 23, 2004.

In 2003, Paula Walker ("Walker"), FMC's hospital administrator, received three patient complaints against Dr. Reed asserting abandonment of a patient, violations of the Americans with Disabilities Act ("ADA") and Emergency Medical Treatment and Active Labor Act ("EMTALA") arising from Dr. Reed's refusal to treat a HIV/AIDS patient, and malpractice resulting in the death of a diabetic patient. Dr. Reed was also charged with intimidating a hospital employee.

On November 9 or 10, 2003, Walker referred these complaints to the Medical Executive Committee ("MEC") at FMC. The MEC is composed of FMC medical staff and is responsible for reviewing charges against one of its members.

The MEC appointed one of its members, Dr. Lee Pankey ("Dr. Pankey"), to investigate the conduct of Dr. Reed and to advise whether Dr. Reed's conduct met the applicable standards of care.

On January 5, 2004, Dr. Pankey advised the MEC that Dr. Reed needed education on the correct procedure for terminating a patient, as well as a reprimand regarding the alleged

2

violations of the ADA and EMTALA. He recommended that no action be taken on the complaint that Dr. Reed failed to admit the diabetic patient or caused the death of that patient.

On January 16, 2004, the MEC adopted Dr. Pankey's recommendations, but concluded that Dr. Reed deserved only a verbal reprimand.

On January 22, 2004, the MEC's recommendation was reported to FMC's Board. The Board rejected the MEC's recommendation. The Board appointed an Ad Hoc Special Professional Review Committee ("Ad Hoc Committee") to conduct an investigation of the patient complaints against Dr. Reed.

On January 23, 2004, FMC retained two independent doctors, Drs. Charles M. Webber ("Dr. Webber") and Frederick B. Carlton ("Dr. Carlton"), to serve on the Ad Hoc Committee.

On February 12, 2004, Drs. Webber and Carlton recommended immediate suspension of Dr. Reed's privileges and referral to the Louisiana State Board of Medical Examiners.

On February 23, 2004, the Board adopted the Ad Hoc Committee's recommendation, suspended Dr. Reed's privileges, and reported this action to the Louisiana State Board of Medical Examiners and the National Practitioner Data Bank. Dr. Reed was given written notice of the suspension; informed that he had thirty (30) days to request a hearing; and informed that, at the hearing, he had the right to representation by counsel, the right to have a record made of the proceedings, and the right to receive written recommendations of the hearing officer and a written decision of the Board.

On March 5, 2004, Dr. Reed requested a hearing. Dr. Reed and FMC agreed that retired Judge Joseph Bleich would serve as the Hearing Officer, and a hearing was set for July 6, 2004.

Subsequently, the hearing was postponed.[3]

On July 15, 2004, Dr. Reed filed suit against Defendants seeking declaratory and injunctive relief for denial of due process and "similar and related" claims under state law. [Doc. No. 1, ¶ 4].

On April 11, 2005, the Court stayed the action pending completion of the hearing process [Doc. No. 23].

On March 6, 2006, the hearing was completed.[4] The Hearing Officer recommended that the Board rescind its suspension of Dr. Reed's privileges, correct all FMC records to reflect this rescission, correct all records with the National Practitioner Data Bank and Louisiana State Board of Medical Examiners, issue a written reprimand for abandonment of a patient and intimidation of a hospital employee, and immediately reinstate Dr. Reed's privileges at FMC.

On March 28, 2006, the Board adopted the Findings and Recommendations of the Hearing Officer and reinstated Dr. Reed's privileges.

On September 27, 2006, FMC filed a Motion for Summary Judgment [Doc. No. 34] on Dr. Reed's due process and breach of contract claims asserting immunity under the HCQIA.

On October 25, 2006, Dr. Reed filed an opposition [Doc. No. 40].

On November 9, 2006, the Court issued a minute entry and requested supplemental memoranda on whether HCQIA immunity applies to § 1983 due process claims [Doc. No. 42].[5]

---

[3]It is not clear from the record when the hearing was postponed.

[4]Multiple sessions were conducted in Winnsboro and Monroe, Louisiana, and Jackson, Mississippi.

[5]The Court also raised the issue of whether Dr. Reed adequately pled a breach of contract claim in his Complaint. However, based on the parties' responses, this appears to be a non-issue.

On November 14, 2006, FMC filed a Reply [Doc. No. 44] to Dr. Reed's opposition.

On November 27, 2006, FMC responded to the Court's request by filing a Supplemental Memorandum By Defendants Addressing Issues Raised by the Court [Doc. No. 45]. Dr. Reed filed a Supplemental Memorandum in Opposition to Motion for Summary Judgment [Doc. No. 46].

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). To satisfy this burden, "they are required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal quotations

omitted). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

"HCQIA immunity is a question of law that the district court may determine on summary judgment." *Rogers v. Columbia/HCA*, 971 F. Supp. 229, 233 (W.D. La. 1997) (citing *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1332-33 (11th Cir. 1994)).

### B. Due Process Claim

Defendants moved for summary judgment on Dr. Reed's § 1983 due process claim asserting immunity under the HCQIA. The Court requested supplemental memoranda on the issue of whether HCQIA immunity applies to § 1983 due process claims. Defendants filed a supplemental memorandum stating that HCQIA immunity does not apply and requested that the Court treat its pending motion as a motion for partial summary judgment on Dr. Reed's breach of contract claim [Doc. No. 45].

Accordingly, Defendants' Motion for Summary Judgment on Dr. Reed's § 1983 due process claim is DENIED.

### C. Breach of Contract Claim

Defendants claim that Dr. Reed's breach of contract claim should be dismissed because their actions are immunized by the HCQIA and move for summary judgment on this basis. Dr. Reed contends that his claim should be excepted from the HCQIA because Defendants acted in bad faith.

The HCQIA provides immunity for qualifying peer review actions. If a "professional review action" of a "professional review body" satisfies the § 11112(a) four-prong test, then the

6

professional review body, any person acting as a member or staff to the body, and any person who participates with or assists the body with respect to the action is immune from damages. *Rogers*, 971 F. Supp. at 233 (citing 42 U.S.C. § 11111(a)(1)).

There is no dispute that Defendants qualify as a "professional review body" and that Defendants were assisting FMC in a "professional review action."

All Defendants fall within the scope of HCQIA immunity because the hospital and its Board members qualify as a "professional review body," or "a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C. § 11151(11). Walker, FMC's administrator, qualifies for immunity as a person who assisted in the peer review actions.

Defendants' actions, including the Board's appointment of the Ad Hoc Committee and the Board's subsequent suspension of Dr. Reed's privileges, qualify as "professional review actions" because they were ". . . based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges . . . of the physician." 42 U.S.C. § 11151(9).

Therefore, Defendants are entitled to a rebuttable presumption that they satisfy § 11112(a). 42 U.S.C. § 11112(a)(4) ("A professional review action shall be presumed to have met the preceding standards . . . unless the presumption is rebutted by a preponderance of the evidence."); *see also Monroe v. AMI Hosps.*, 877 F. Supp. 1022, 1027 (W.D. Tex. 1994) (citing

42 U.S.C. §11112(a)). To defeat summary judgment, Dr. Reed "bears the burden of proving by a preponderance of the evidence that the peer review process did not satisfy... § 11112(a)." *Rogers*, 971 F. Supp. at 234 (citing *Bryan*, 33 F.3d at 1333 ("... the rebuttable presumption of HCQIA section 11112(a) creates an unusual summary judgment standard....")).

Section 11112(a) employs a four-prong test. In order to rebut the presumption of immunity, Dr. Reed must raise a genuine issue of material fact whether Defendants' actions were taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after a reasonable effort to obtain the facts of the matter,
(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a)(1)-(4).

### 1. Reasonable Belief that the Action was in the Furtherance of Quality Health Care

Defendants claim that they acted in the reasonable belief that suspending Dr. Reed's privileges would restrict his incompetent behavior and protect their patients. Defendants based their decision on the Ad Hoc Committee's review, the qualifications of the physicians conducting the review, and the Ad Hoc Committee's recommendation.

Dr. Reed did not analyze whether Defendants' actions satisfy § 11112(a). Instead, Dr. Reed contends that Defendants acted unreasonably and in bad faith throughout the events leading

8

to his suspension. Specifically, Dr. Reed argues that Defendants revoked his privileges contrary to MEC's recommendation and based their decision on charges later disproved at the hearing.

The first prong of the § 11112(a) test is satisfied if the reviewers, "with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Jenkins v. Methodist Hosps. of Dallas, Inc.*, Docket No. 02-1823, 2004 U.S. Dist. LEXIS 28094, *51-52 (N.D. Tex. 2004) (discussing 42 U.S.C. § 11112(a)(1)) (citing H.R. Rep. No. 903, at 10, reprinted in 1986 U.S.C.C.A.N. at 6393). In making this determination, the Court will not reweigh the evidence or substitute its own judgment for that of the decision-maker. *See Bryan*, 33 F.3d at 1337 (citing *Shahawy v. Harrison*, 875 F.2d 1529, 1533 (11th Cir. 1989)).

Dr. Reed's claim that Defendants were motivated by ill will is immaterial. "The legislative history of § 11112(a) indicates that its reasonableness requirements were intended to create an objective standard, rather than a subjective good faith standard." *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992); *see also Monroe*, 877 F. Supp. at 1028 (citing *Austin*, 979 F.2d at 734).

Dr. Reed also contends that Defendants' decision to suspend his privileges was unreasonable because the patient complaints underlying their decision were disproved at the hearing. For example, one of the patient complaints against Dr. Reed alleged that he disclosed confidential information to a patient's mother, but the Hearing Officer found there was no support for this allegation. To determine whether § 11112(a)(1) is satisfied, the issue is not whether "[D]efendants' initial concerns are ultimately proven to be medically sound," but whether Defendants' actions were objectively reasonable. *Poliner v. Tex. Health Sys.*, Docket

9

No. 00-1007, 2003 U.S. Dist. LEXIS 17162, *37 (N.D. Tex. 2003) (noting that most circuits have adopted the objectively reasonable standard).

Defendants' decision was objectively reasonable based on the serious nature and number of patient complaints against Dr. Reed. Drs. Webber and Carlton reported to Defendants that Dr. Reed acted unethically toward two patients and their families, bullied hospital personnel, violated the ADA and EMTALA, refused to admit two patients because of their insurance status, and committed medical malpractice resulting in the death of a patient. Therefore, the subsequent findings of the Hearing Officer are irrelevant.

Dr. Reed also contends that Defendants ignored the MEC's recommendation to verbally reprimand him. However, faced with the apparent prospect of imminent injury to patients and evidence of hostility toward other hospital employees, the MEC's contrary recommendation does not contradict Defendants' belief that they were protecting their patients. *See Lee v. Trinity Lutheran Hosp.*, 408 F.3d 1064, 1071-72 (8th Cir. 2005) (citing *Brader v. Allegheny Gen. Hosp.*, 167 F.3d 832, 843 (3rd Cir. 1999) (reasoning that the fact that "not every panel reached the identical conclusions about the necessity of suspending [physician's] privileges" did not "meet [his] burden of contradicting the existence of a reasonable belief" the hospital was "furthering health care quality")).

Dr. Reed has failed to raise a genuine issue of material fact whether Defendants' suspension of his privileges was taken in the reasonable belief that it furthered quality health care.

### 2. Reasonable Effort to Obtain the Facts of the Matter

Defendants claim that they suspended Dr. Reed's privileges after making a reasonable

10

effort to determine the facts. Prior to taking any adverse action against Dr. Reed, the Board referred the matter to the MEC. Following the MEC's recommendation, the Board appointed an Ad Hoc Committee and retained two independent physicians with clinical experience in the pertinent areas of medicine. The Ad Hoc Committee reviewed the medical charts of five patients, interviews and statements of eight witnesses, and family complaint forms.[6] Following this review, the Ad Hoc Committee recommended immediate suspension because they believed Dr. Reed's behavior was not only disruptive, but dangerous to patient care.

Dr. Reed contends that Defendants acted in bad faith by unreasonably ignoring the contrary finding of the MEC. The President of the Board admitted that he had no reason to doubt the integrity or competency of the MEC members. As further evidence of bad faith, Dr. Reed points to the additional patient complaints reviewed by the Ad Hoc Committee. Faced with conflicting recommendations from two respected bodies, Dr. Reed suggests that Defendants should have investigated further before taking action.

Dr. Reed also contends that Defendants violated the Medical Staff Bylaws by rejecting the MEC's recommendation and appointing an Ad Hoc Committee. Dr. Reed argues that the Medical Staff Bylaws provide the exclusive procedure for suspending a physician's privileges. The Bylaws do not allow the Board to unilaterally reject the MEC's recommendation and appoint another reviewing body.

The second prong of the § 11112(a) test is satisfied if "the totality of the process" leading to the professional review actions evidenced a reasonable effort to determine the facts. *Onel v. Tenet Healthsystems*, Docket No. 02-2636, 2003 U.S. Dist. LEXIS 20071, *12 (E.D. La. 2003)

---

[6]Two patient complaints were added to the Ad Hoc Committee's review.

(discussing 42 U.S.C. § 11112(a)(2)) (quoting *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 637 (3rd Cir. 1996)).

In this case, the Ad Hoc Committee's review of all patient complaints provided to them evidences only a reasonable effort to determine the facts. Dr. Reed's disagreement with the Ad Hoc Committee's conclusion is insufficient to show that Defendants did not make a reasonable effort to obtain the facts underlying the patient complaints.

Dr. Reed also contends that the HCQIA does not authorize a health care facility to violate its own bylaws, but he provides no authority for this position. Deviation from the bylaws, if any occurred, is irrelevant to whether Defendants are entitled to immunity, so long as they complied with the procedures set forth in the HCQIA.

Dr. Reed has failed to raise a genuine issue of material fact whether Defendants suspended Dr. Reed's privileges without making a reasonable effort to obtain the facts of the matter.

### 3. Adequate Notice and Hearing Procedures

Defendants claim that they afforded Dr. Reed adequate notice and hearing procedures after they suspended his privileges. Defendants argue they suspended Dr. Reed's privileges because his actions and his treatment of a FMC employee presented an imminent danger to their patients. Subsequent to the suspension, the Board gave Dr. Reed written notice of the action and his right to request a hearing. After Dr. Reed requested a hearing, extensive hearing proceedings were conducted.

Dr. Reed contends he was suspended under non-exigent circumstances, and, therefore, he was entitled to a pre-suspension hearing. Dr. Reed disputes Defendants' claim that an immediate

suspension was required because none of the patients who complained were currently hospitalized and Defendants delayed in suspending his privileges. The patient complaints against Dr. Reed occurred throughout 2003. When Walker, FMC's administrator, referred these complaints to the Board, she described them as "urgent." However, the Board investigated Dr. Reed for several months before taking action.

Dr. Reed also contends that he was not afforded a fair and impartial post-suspension hearing because the Hearing Officer was only authorized to make a recommendation to the Board. Therefore, the Board acted as the true decision-maker, but had an obvious bias against Dr. Reed.

The third prong of the § 11112(a) test is satisfied if the professional review action is taken "**after** adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3) (emphasis added). However, the "emergency provision" of § 11112(c)(2) allows a professional review body to suspend a physician's privileges **prior** to providing notice and hearing procedures "where failure to take such an action may result in an imminent danger to the health of any individual," so long as the physician is subsequently afforded notice and a hearing. 42 U.S.C. § 11112(c)(2).

Defendants' decision to suspend Dr. Reed's privileges prior to providing notice and a hearing constitutes "an immediate suspension or restriction of privileges." 42 U.S.C. § 11112(c)(2). Dr. Reed argues that Defendants delayed in investigating and suspending his privileges, and, therefore, he did not present an imminent danger to patients. However, § 11112(c)(2) permits suspension when danger **may** result. *See Sugarbaker v. SSM Health Care,*

190 F.3d 905, 917 (8th Cir. 1999) ("the [HCQIA] does not require imminent danger to exist before a summary restraint is imposed. It only requires that the danger may result if the restraint is not imposed.") (quoting *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1443 (9th Cir. 1994)). The entire investigation by the MEC and the Ad Hoc Committee took place over a three-month period. It was objectively reasonable for Defendants to conclude, after the completion of the investigation by the Ad Hoc Committee, that immediate suspension was required because several instances of sub-standard and dangerous care had been identified, including some not previously considered by the MEC.

While Dr. Reed contends that he was not provided a fair hearing, he has presented no evidence that Hearing Officer Bleich acted unfairly or impartially.

Dr. Reed has failed to raise a genuine issue of material fact whether Defendants reasonably concluded that his suspension was necessary to protect its patients and provided post-suspension notice and a hearing.

### 4. In the Reasonable Belief that the Action was Warranted by the Facts Known after such Reasonable Effort to Obtain Facts and after Meeting the Requirement of Paragraph (3)

Defendants claim they suspended Dr. Reed's privileges in the reasonable belief that suspension was warranted by the facts known after a reasonable effort to obtain facts and after providing post-suspension notice and a hearing.

The fourth prong of the 42 U.S.C. § 11112(a) test essentially combines the first three prongs. *Rogers*, 971 F. Supp. at 237 (discussing 42 U.S.C. § 11112(a)(4)). The case law indicates an abbreviated analysis is all that is required. *Id.*; *Jenkins*, 2004 U.S. Dist. LEXIS 28094 at *61-61.

14

Dr. Reed has failed to show that Defendants' actions do not meet the standards prescribed in § 11112(a)(1)-(3). Defendants suspended Dr. Reed's privileges following two reviews of the complaints against Dr. Reed. The Ad Hoc Committee recommended immediate suspension, and, based on this recommendation, the Board concluded that Dr. Reed's continued privileges constituted a threat to patient care. Following suspension, Defendants provided Dr. Reed with a fair and impartial hearing in accordance with the HCQIA.

"The role of federal courts on review of [peer review] actions is not to substitute our judgment for that of the hospital's governing board or to reweigh the evidence regarding the... termination of medical staff privileges." *Bryan*, 33 F.3d at 1337 (internal quotations omitted). Dr. Reed has failed to raise a genuine issue of material fact whether Defendants suspended his privileges in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of § 11112(a)(3).

Dr. Reed has failed to rebut the presumption that Defendants are entitled to immunity under the HCQIA.[7] Defendants' Motion for Summary Judgment on Dr. Reed's breach of contract claim is GRANTED.[8]

### III. CONCLUSION

For the reasons set forth in this ruling, Defendants' Motion for Summary Judgment [Doc. No. 34] is GRANTED IN PART AND DENIED IN PART. Defendants' Motion for Summary

---

[7] The Court's conclusion that Defendants are entitled to immunity on Dr. Reed's breach of contract claim under the HCQIA's deferential standards has no application to the merits of Dr. Reed's § 1983 due process claim.

[8] Because Dr. Reed is not a "prevailing party" the Court need not address his claim for attorneys' fees.

Judgment on Dr. Reed's due process claim is DENIED. Defendants' Motion for Summary Judgment on Dr. Reed's breach of contract claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE, each party to bear its own costs.

MONROE, LOUISIANA, this 11 day of December, 2006.

*[signature]*

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE