# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **CHARLES REED** | **CIVIL ACTION NO. 04-1481** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **FRANKLIN PARISH HOSPITAL SERVICE DISTRICT, ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

## RULING

Before the Court is Defendants Franklin Parish Hospital Service District's[1], Joe Gravelle's, Rebecca Singleton's, Woodrow Bell's, Madge Wilson's, John Carroll's, and Paula Walker's Motion for Summary Judgment [Doc. No. 50] on Dr. Charles Reed's ("Dr. Reed") 42 U.S.C. § 1983 procedural due process claim.[2] Defendants claim that, because Dr. Reed's medical staff membership and clinical privileges (hereinafter referred to as "privileges") were suspended under exigent circumstances, he was only entitled to a post-suspension hearing. Dr. Reed filed a Memorandum in Opposition [Doc. No. 52] responding that he was entitled to a pre-suspension hearing.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED, and Dr. Reed's 42 U.S.C. § 1983 procedural due process claim is DISMISSED WITH PREJUDICE.

---

[1] Franklin Parish Hospital Service District is doing business as Franklin Medical Center ("FMC").

[2] The individual Defendants are members of FMC's Board of Commissioners and its hospital administrator.

1

1.  **FACTS AND PROCEDURAL HISTORY**

The Court incorporates by reference its statement of facts and procedural history in the Court's prior ruling [Doc. No. 48] granting Defendants' Motion for Summary Judgment on Dr. Reed's breach of contract claim.

On December 22, 2006, Defendants filed a Motion for Summary Judgment [Doc. No. 50] on Dr. Reed's 42 U.S.C. § 1983 procedural due process claim.

On January 12, 2007, Dr. Reed filed a Memorandum in Opposition [Doc. No. 52].

On January 25, 2007, Defendants filed a reply [Doc. No. 57].

II. **LAW AND ANALYSIS**

   A. **Summary Judgment Standard of Review**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache*

*Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). To satisfy this burden, "they are required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal quotations omitted). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B. Due Process Claim

Defendants assert that if a physician is suspended under exigent circumstances, such as concern for patient safety, an adequate post-suspension remedy satisfies due process. *See Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc); *see also Patel v. Midland Memorial Hosp. & Medical Ctr.*, 298 F.3d 333, 339-40 (5th Cir. 2002). Defendants claim that they acted in the reasonable belief that suspending Dr. Reed's privileges would restrict his incompetent behavior and protect their patients. Defendants based their decision on Drs. Webber's and Carlton's report that Dr. Reed acted unethically toward two patients and their families, bullied hospital personnel, violated the ADA and EMTALA, refused to admit two patients because of their insurance status, and committed medical malpractice resulting in the death of a patient. Following his suspension, Dr. Reed was afforded a hearing conducted by an independent hearing officer.

Dr. Reed responds by claiming that he was entitled to a pre-suspension hearing because his case is distinguishable from the cases cited by Defendants. He argues that: 1) because the MEC and Ad Hoc Committee reached conflicting conclusions, Defendants did not reasonably believe he posed a threat to patient safety; 2) because the persons who decided to suspend his

3

privileges were not physicians, their decision is not entitled to deference; 3) because Defendants violated FMC's bylaws, he was not afforded adequate pre-suspension process; and 4) because he was forced to close his practice following his suspension, he was entitled to a pre-suspension hearing under *Matthews v. Eldridge*.

Under the Fourteenth Amendment, the Constitution guarantees that life, liberty, or property will not be taken by the state without due process of law.[3] U.S. CONST. amend. XIV, § 1. As conceded by Defendants, Dr. Reed's privileges are a constitutionally protected property interest. Therefore, the parties' dispute centers on whether the pre-suspension procedures were constitutionally adequate.[4]

"Ordinarily, [the] government may effect a deprivation only *after* it has accorded due process. . . ." *Caine*, 943 F.2d at 1412. To determine what amount of pre-deprivation process is due, the Court analyzes three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). However, where a physician's privileges are summarily suspended under exigent circumstances, ". . . an adequate post-suspension remedy satisfies the requirements of due process." *Id.*

To determine whether Dr. Reed was suspended under exigent circumstances, ". . . the key question is . . . whether [Defendants] had reasonable grounds for suspending him as a danger" to

---

[3] FMC is a political subdivision of the State of Louisiana. [Doc. No. 50-3, ¶ 2].

[4] Dr. Reed does not appear to contest the sufficiency of his post-suspension process.

4

patient safety at the time of his suspension. *Patel*, 298 F.3d at 341. Dr. Reed argues that, unlike the defendants in *Patel*, Defendants faced inconsistent findings by their reviewing bodies. *Id.* at 340, n.14 (finding that the defendants reasonably relied on the evidence before it when suspending Dr. Patel because "[t]he reviewers **consistently** found Dr. Patel to be an imminent danger and suggested that the consequences of delaying action could be life-threatening.") (emphasis added). However, Defendants took steps to substantiate their concerns prior to suspending Dr. Reed by seeking recommendations from two independent doctors with expertise in the pertinent areas of medicine. Therefore, Defendants' decision was objectively reasonable based on the serious nature and number of patient complaints against Dr. Reed. Although a more thorough investigation may have shown that he was not dangerous to patient care, ". . . this possibility does not affect the reasonableness of [Defendants'] investigation. . . ." *Patel*, 298 F.3d at 340, n.14. The Court finds that Dr. Reed has failed to raise a genuine issue of material fact whether he was terminated under exigent circumstances.

Dr. Reed also argues that Defendants' decision to suspend him is not entitled to deference because, compared to the MEC, the Ad Hoc Committee and Board had no physician members. However, the Ad Hoc Committee's recommendation was based on the report of two undisputedly qualified and independent physicians, and therefore, is entitled to deference.

Dr. Reed also argues that Defendants were required to follow their bylaws. *See Caine*, 943 F.2d at 1408-09 ("In form, the hospital followed every step of its medical staff bylaws both before and after Dr. Caine's suspension."). It is clear in this case that Defendants did not follow the Medical Staff Bylaws and debatable whether the Hospital Bylaws permitted Defendants to unilaterally ignore the Medical Staff Bylaws. However, *Caine* does not stand for the proposition

5

that hospitals are required to comply with their bylaws under due process. Instead, the Fifth Circuit in *Caine* reasoned that bylaws permitting summary suspension under exigent circumstances comported with due process. *Id.* at 1441 ("Integral to our analysis is the concession that Dr. Caine was sanctioned under the bylaw authorizing quick action by the hospital to protect the lives of patients."); *see also Marin v. Citizens Memorial Hosp.*, 700 F. Supp. 354, 358 (S.D. Tex. 1988) ("Even if an action by a governmental entity violates its own by-laws, there is no due process violation unless that conduct also violates minimum constitutional standards.") (internal citations omitted). Therefore, Defendants' noncompliance with their bylaws is irrelevant to the Court's analysis.

Dr. Reed also argues that the consequences of his suspension show that his private interest was significant, and therefore, he was entitled to a pre-suspension hearing.[5] Dr. Reed cites *Darlak v. Bobear*, where the Fifth Circuit found no due process violation because Dr. Darlak was allowed to address the reviewing committee prior to his suspension. *Darlak v. Bobear, et al.*, 814 F.2d 1055, 1063 (5th Cir. 1987) ("... to counter the increased private interest in this case, additional procedures were employed. . . . Based on our weighing of the [*Matthews v. Eldridge*] factors, we hold that Dr. Darlak received all the due process required by the Constitution"); s*ee also Caine*, 943 F.2d at 1407 (the Ad Hoc Committee reviewing the treatment of the patient in question met with the physician on two occasions for a total of three hours prior to suspension). While the Court is mindful of the serious personal and professional consequences of Dr. Reed's suspension, the Fifth Circuit's controlling case on this issue

---

[5]Dr. Reed was forced to dissolve his association and vacate his offices, practice with no privileges in the Parish's sole hospital, and respond to reporting to the National Practitioner Data Bank and Louisiana State Board of Medical Examiners, to which he remains listed.

6

specifically rejected a physician's claim that any pre-suspension process is required when exigent circumstances are present and an adequate post-suspension remedy is provided. *See Patel*, 298 F.3d at 341 ("Although Dr. Patel is correct that the doctor in *Caine* happened to receive some notice of the charges against him prior to suspension, *Caine* did not create a pre-suspension process requirement where patient safety is at risk. On the contrary, *Caine* makes clear that 'not even an informal hearing . . . must precede a deprivation undertaken to protect the public safety.'").

A hospital has ". . . no constitutional duty to provide a procedural regimen that guarantees faultless decisionmaking; the state's interests in safety and efficiency find expression in the tolerable level of risk." *Caine*, 943 F.2d at 1413. The Court finds that Dr. Reed's privileges were suspended under exigent circumstances and he was provided an adequate post-suspension hearing, therefore, no due process violation occurred.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 50] is GRANTED, and Dr. Reed's 42 U.S.C. § 1983 procedural due process claim is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 29th day of January, 2007.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE